D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and MICHAEL MONTGOMERY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting ("CIR") and Michael Montgomery (collectively "Plaintiffs") seek processing and release of agency records requested from the United States Department of Labor ("DOL" or "Defendant").

2. On February 23, 2021, Plaintiffs submitted a FOIA request to DOL seeking disclosure of records related to DOL's findings with regard to Central Romana Corporation's operations in the Dominican Republic from 2014 to 2020.

3. To date, Defendant has failed to issue a final determination with regards to the request.

More than twenty business days have passed since Plaintiffs submitted the request to the agency on February 23, 2021.

4. Plaintiffs have exhausted all administrative remedies pursuant to § 552(a)(6)(C)(i), as Defendant has failed to comply with the statutory time limit for providing a determination.

5. The requested records are of significant public interest because they will directly contribute to the public's understanding of DOL's monitoring efforts of companies that have or may have previously violated labor laws, as well as the efficacy of those government efforts. The requested records are also of significant public interest because they will enhance the public's understanding of the operation of the Dominican Republic-Central America FTA ("CAFTA-DR") trade agreement, its effect on the sugar industry (a major import for the United States economy), and how forced labor—including child labor—corrupts this industry.

6. The requested records are of particular interest to Plaintiffs because, as members of the news media, they have an abiding interest in informing the public about matters of serious concern.

7. Immediate release of the records is required as Plaintiffs are currently producing a radio feature and digital stories on the working conditions in the sugar industry, and they request these records in order to realize this important work.

8. Plaintiffs now ask the Court for an injunction requiring Defendant to promptly release the withheld records.

## JURISDICTION

9. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

## VENUE AND INTRADISTRICT ASSIGNMENT

10. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

11. Assignment to the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County,

where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

## PARTIES

12. Plaintiff CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California. Founded in 1977 as the first non-profit investigative news organization in the country, CIR has received multiple awards for its reporting.

13. Plaintiff CIR publishes *Reveal*, an online news site at revealnews.org, and produces *Reveal*, a weekly public radio show with approximately 3 million listeners per week. In addition to this flagship journalism, CIR also produces documentaries and other media.

14. Plaintiff Michael Montgomery is a senior reporter and producer for *Reveal* and an employee of CIR. He has extensive experience reporting on international human rights abuses, and he has been the recipient of the Edward R. Murrow Award and Peabody Award, among others.

15. Defendant DOL is a department of the executive branch of the United States government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DOL has its headquarters in Washington, D.C., where its Bureau of International Labor Affairs is housed. Dep't of Labor, *Bureau of International Labor Affairs*, https://www.dol.gov/agencies/ilab.

16. DOL also maintains local offices all over the country, including a Wage and Hour Division office in Walnut Creek, CA, which serves "San Francisco, San Mateo, Napa, Del Norte, Humboldt, Mendocino, Alameda and Contra Costa county." Dep't of Labor, *Local Offices*, https://www.dol.gov/agencies/whd/contact/local-offices#ca.

## FACTUAL AND PROCEDURAL BACKGROUND

## DOL AND ILAB REPORTING ON FORCED LABOR

17. DOL was formally established in 1913, and its mission is "[t]o foster, promote, and develop the welfare of the wage earners, job seekers, and retirees of the United States; improve working conditions; advance opportunities for profitable employment; and assure work-related benefits and rights." Dep't of Labor, *About Us*, https://www.dol.gov/general/aboutdol.

18. The Bureau of International Labor Affairs ("ILAB") is a component of DOL, and it "leads the U.S. Department of Labor's efforts to ensure that workers around the world are treated fairly and are able to share in the benefits of the global economy." Dep't of Labor, *Frequently Asked*

*Questions*, https://webapps.dol.gov/dolfaq/go-dol-faq.asp?faqid=490&theagencyid=ILAB&faqtop=Agencies+%26+Offices.  ILAB's mission is "to improve global working conditions, raise living standards, protect workers' ability to exercise their rights, and address the workplace exploitation of children and other vulnerable populations." *Id.*  ILAB's "work helps level the playing field for U.S. workers by ensuring that our trade partners do not lower labor standards as a means of attracting trade and investment" and by "[e]nforcing the labor provisions of U.S. free trade agreements and trade preference programs to ensure that no country gains an unfair advantage."  Dep't of Labor, *Trade Negotiation & Enforcement,* https://www.dol.gov/agencies/ilab/our-work/trade.

19. To accomplish its mission, ILAB's Office of Forced Labor, Child Labor and Human Trafficking "combats child labor, forced labor, and human trafficking" by engaging in "[i]n-depth research on child labor and forced labor in more than 150 countries around the world, including individual country roadmaps to support the enforcement of labor provisions in trade agreements and preference programs."  Dep't of Labor, *Child Labor, Forced Labor & Human Trafficking*, https://www.dol.gov/agencies/ilab/our-work/child-forced-labor-trafficking.

20. ILAB regularly publishes "reports on international child labor and forced labor that serve as valuable resources for research, advocacy, government action and corporate responsibility."  Dep't of Labor, *International Child Labor & Forced Labor Reports*, https://www.dol.gov/agencies/ilab/resources/reports/child-labor.

21. ILAB has regularly reported on forced labor conditions in the Dominican Republic, with its most recent published reporting on that nation being the *2019 Findings on the Worst Forms of Child Labor: Dominican Republic*, https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2019/Dominican-Republic.pdf.

22. That 2019 report focused on child labor and found that children in the Dominican Republic "[c]lear[ed] land for sugarcane production, plant[ed] and harvest[ed] sugarcane, and collect[ed] cut cane." *Id.* at 1.

23. In producing these types of reports, ILAB has relied upon trip notes produced by a DOL delegation to the Dominican Republic and on interviews conducts by DOL officials. *See, e.g.*, Dep't of Labor, *2017 Findings on the Worst Forms of Child Labor: Dominican Republic* at 10 n. 11,

-4-
COMPLAINT FOR INJUNCTIVE RELIEF

16, https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2017/dominicanrepublic.pdf.

### DOL MONITORING OF SUGAR INDUSTRY, INCLUDING CENTRAL ROMANA CORP. LTD.

24. Sugarcane has been on DOL's Trafficking Victims Protection Reauthorization List and Report ("TVPRA List and Report") since 2009. *See* Dep't of Labor, *Submission of Comments to the U.S. Department of Labor by the Dominican Sugar Industry* 2, https://www.dol.gov/sites/dolgov/files/ILAB/submissions/DominicanRepublic20200113.pdf.

25. Central Romana Corporation, Ltd. ("Central Romana"), is one of "three major private sector sugarcane companies in the Dominican Republic," and is a major exporter of Dominican Republic sugarcane to the United States. *Id.*

26. Central Romana is part of the Fanjul Corporation, which was founded by the Fanjul family. *See* Justin Villamil, *These Sugar Barons Built an $8 Billion Fortune With Washington's Help*, BLOOMBERG (Aug. 9, 2017) https://www.bloomberg.com/news/articles/2017-08-09/sugar-barons-amass-8-billion-fortune-by-mastering-u-s-politics. The Fanjul family includes major donors to both the Republican and Democratic parties. *Id.*

27. Central Romana's questionable work practices have required public and government accountability. *See, e.g.*, CORP. ACCOUNTABILITY LAB, *Sugar Companies Sued For Forcibly Evicting Sixty Families From Their Homes* (Feb. 3, 2020) https://corpaccountabilitylab.org/calblog/2020/2/3/sugar-companies-sued-for-forcibly-evicting-sixty-families-from-their-homes-in-the-dominican-republic; Amy Bracken, *A sweet deal: The Royal family of can benefits from political giving*, AL-JAZEERA (July 23, 2015) http://america.aljazeera.com/multimedia/2015/7/fanjul-family-benefits-political-donations.html.

### THE FOIA REQUEST

28. On February 23, 2021, Mr. Montgomery, on behalf of CIR, requested records from ILAB pertaining to Central Romana's operations. A true and correct copy of this letter is attached as Exhibit A.

29. Specifically, Mr. Montgomery requested "[a]ll records possessed by the Department

of Labor ILAB that discuss labor practices, treatment of workers, and living conditions in the Dominican Republic in lands and/or communities overseen by Central Romana or any of its affiliated individuals or companies from 2014-2020." (Ex. A.)

30. Mr. Montgomery noted that the records may come in the form of "documents, correspondence, Trip Notes, Interviews, Written Communications," among other formats, and that these records may be among the "notes, files, emails, trip records, field notes, spreadsheets, used to produce the six annual Periodic Reviews of Implementation of Recommendations in the U.S. Department of Labor's Public Report of Review of Submission 2011-03 (Dominican Republic)." *Id.*

31. Mr. Montgomery added that records responsive to his request may also underlie the two following statements:

- "'Efforts and progress, however, continue to vary widely across companies.' (Fifth Periodic Review, https://www.dol.gov/sites/dolgov/files/ILAB/legacy/files/Fifth%20 Periodic%20Review%20of%20Implementation%20of%20Recommendations%20in%2 0DOL's%20Report%20of%20Review%20of%20Submission%202011-03.pdf)
- 'Efforts and progress, however, continue to vary significantly across companies.' (Sixth Periodic Review, (https://www.dol.gov/sites/dolgov/files/ILAB/legacy/files/Dominican %20Republic%20Sixth%20Periodic%20Review%20Statement%20(English).pdf)." *Id.*

32. Mr. Montgomery explained that "[t]he requested materials involve matters of significant public interest. Records likely to be disclosed in response to this request will contribute significantly to the public's understanding of DOL's monitoring efforts" of forced labor, including child labor. *Id.* He further explained that disclosure was in the public interest because "[t]hese details are not already publicly available and the records would provide a more thorough public understanding of the role of the sugar industry in the CAFTA/DR trade agreement, and of the production of sugar in the Dominican Republic"—sugar which is imported and refined in the United States and regulated by the United States Government. *Id.* Mr. Montgomery also explained Plaintiffs' interest in the request, as *Reveal* intends to "use records responsive to this request in the creation of widely disseminated news stories that will inform the public about these matters and the operations of the government." *Id.*

33. Having explained the public interest in the story and addressed his status as a member of the news media, Mr. Montgomery also requested expedited processing pursuant to 28 C.F.R. § 16.5(e)(1)(iv)." *Id.*

34. Mr. Montgomery received a routine acknowledgment of his request from a DOL Government Information Specialist on February 25, 2021. A true and correct copy of this e-mail acknowledgment is attached as Exhibit B. The e-mail acknowledgment read, "Your request has been assigned to ILAB with tracking number 2021-F-05220. When they begin processing it, you will be able to track its progress at https://efoia.dol.gov/App/CheckStatus.aspx. If you need to contact them about it for any reason, please phone 202-693-4903 and reference the tracking number at the time of this call." (Ex. B.)

35. Plaintiffs have received no further correspondence from DOL regarding Mr. Montgomery's February 23, 2021 request. More than twenty working days have passed since Mr. Montgomery submitted his FOIA request.

36. DOL has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(C)(i), which requires that an agency to determine whether it will comply with a request within twenty business days of receipt.

37. Having exhausted all administrative remedies, Plaintiffs now seek immediate injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act, 5 U.S.C. § 552

38. Plaintiffs repeat and reallege paragraphs 1-37.

39. DOL is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and provide a lawful reason for withholding any materials as to which it is claiming an exemption.

40. DOL has improperly delayed the requests and appeals, which warranted expedited processing.

41. DOL has failed to issue final determinations as to Plaintiffs' appeals within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(ii). Accordingly, Plaintiffs are

deemed to have exhausted their administrative remedies under FOIA.

42. Plaintiffs are entitled to declaratory and injunctive relief compelling the expedited release and disclosure of the requested records.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendant DOL violated FOIA by failing to provide requested records in response to Plaintiffs' requests and failing to notify Plaintiffs of a final determination within the statutory time limit;

2. Declare that the documents sought by the requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3. Order Defendant DOL to expeditiously provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED:  May 20, 2021

Respectfully submitted,

By: _s/ D. Victoria Baranetsky_
D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 809-3160
Fax: (510) 849-6141
Email: vbaranetsky@revealnews.org

Attorney for Plaintiffs

*In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all Attorneys for Plaintiffs have concurred in the filing of this document.*